# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SAM BAHOOR, | ) |
| | ) |
| Plaintiff, | ) No. 15 C 5490 |
| | ) |
| v. | ) |
| | ) Judge Edmond E. Chang |
| VARONIS SYSTEMS, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Sam Bahoor alleges that Defendant Varonis Systems, Inc. lured him into accepting a job with false promises and later improperly fired him.[1] Varonis now moves to compel arbitration, arguing that the parties' employment agreement mandates arbitration of Bahoor's claims. Varonis further requests that this Court dismiss Bahoor's complaint under Rule 12(b)(1) or in the alternative, stay the proceedings pending arbitration. In response, Bahoor argues that arbitration is not required because (1) the scope of the arbitration clause does not encompass his claims; (2) arbitration would be prohibitively expensive; and (3) Varonis waived its

---

[1]The Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332. The parties are completely diverse; Defendant Varonis Systems, Inc. is incorporated in Delaware and has a principal place of business in New York. R. 1, Notice of Removal ¶ 8 (citing R. 1-3, Gerson Dec. ¶ 4). And Plaintiff Sam Bahoor is a citizen of Illinois. *Id.* ¶ 6 (citing R. 1-1, Exh. 1, Compl. ¶ 9). Further, the amount in controversy exceeds $75,000. *Id.* ¶ 10 (citing Compl. ¶ 8).

The Court points out that Varonis's Notice of Removal—which states that Bahoor is a *resident* of Illinois, *id* ¶ 6—is insufficient to establish citizenship. *See Denlinger v. Brennan*, 87 F.3d 214, 216 (7th Cir. 1996) (citizenship means domicile, or physical presence with the intent to stay, and not residence); *Am.'s Best Inns, Inc. v. Best Inns of Abilene, L.P.*, 980 F.2d 1072, 1074 (7th Cir. 1992) ("In federal law citizenship means domicile, not residence."). But Bahoor's underlying complaint *does* allege that he is domiciled in Illinois and properly establishes citizenship. Compl. ¶ 9.

right to arbitrate. The Court holds that Bahoor's claims are arbitrable, so the case cannot proceed in court. As a formal matter, however, the Court will not enter an order compelling arbitration because the parties' contract mandates arbitration in New York—and only a district court in that forum can compel arbitration. Instead, the Court converts Varonis's motion into a motion to dismiss for improper venue under Rule 12(b)(3) and grants the dismissal.

## I. Background

In evaluating a motion to dismiss for improper venue, the Court "takes all the allegations in the complaint as true unless contradicted by the defendant's affidavit and may examine facts outside the complaint." *Interlease Aviation Inv'rs II (Aloha) L.L.C. v. Vanguard Airlines, Inc.*, 262 F. Supp. 2d 898, 913 (N.D. Ill. 2003) (citation omitted). It also "constru[es] all facts and draw[s] reasonable inferences in favor of the plaintiff[]." *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 806 (7th Cir. 2011).

This case stems from a soured employment relationship. In March 2014, Varonis Systems, an IT software company, allegedly began recruiting Sam Bahoor to work as a Channel Manager, which is like a sales representative. R. 1-1, Exh. 1, Compl. ¶¶ 13, 16.[2] At the end of March, Bahoor interviewed in Chicago with Asaf Tsur, a director of Varonis's inside sales and telemarketing teams. *Id.* ¶ 19. During this meeting, Tsur allegedly made numerous promises about the position, including that (1) it would be a long-term role with room for growth; (2) annual compensation

---

[2]Citation to the docket is "R." followed by the entry number.

would include a $93,000 base salary and $62,000 commission; and (3) commission was based on a revenue target that was easily attainable (with a "98-100% certainty"). *Id.* ¶¶ 20-30. Although Bahoor was reluctant to leave his steady job in California, Tsur's assurances convinced him to accept the job in Chicago. *Id.* ¶¶ 29-30, 32.

Upon accepting the position, Bahoor signed an agreement entitled, "At-Will Employment, Confidential Information, Invention Assignment, and Arbitration Agreement." *Id.* ¶ 33; R. 1-2, Exh. 2, Agreement. This Agreement provided that "all employment-related disputes … arising out of, relating to, or resulting from my employment with the company or the termination of my employment with the company, including any breach of this agreement, shall be subject to binding arbitration … ." *Id.* ¶ 12(A). The arbitration provision included a comprehensive list of all arbitrable disputes, including "any statutory claims under local, state or federal law" and "any … common law claims." *Id.* And the Agreement also stated that "the Federal Arbitration Act shall continue to apply with full force and effect … ." *Id.*

Problems arose immediately after Bahoor started working. First, Bahoor discovered that his compensation was not based on revenue targets, as Tsur had originally described. Compl. ¶¶ 39-41. Instead, commissions were determined by metrics unrelated to revenue, such as the performance of an inside marketing team over which Bahoor had no influence. *Id.* Bahoor complained to his manager, Barbra Aboud, about this issue to no avail. *Id.* ¶¶ 47-49. A few months later, the company

3

gave Bahoor a report showing a drop in performance with the inside telemarketing team; when Bahoor alerted management that the data in the report was incorrect, he was repeatedly ignored. *Id.* ¶¶ 51-62, 71-75. Bahoor began shifting his focus to improving the data and the telemarketing team's performance, an undertaking that prevented him from completing his actual responsibilities to manage reseller accounts. *Id.* ¶¶ 69-70. In early December 2014, Aboud and an HR representative let Bahoor know that his performance was declining. *Id.* ¶¶ 77-79. Bahoor believed that management based its conclusion on the inaccurate reports and erroneous data that he had repeatedly pointed out. *Id.* A few weeks later, Varonis fired Bahoor after just six months with the company. *Id.* ¶ 80.

Bahoor now alleges three causes of action: promissory estoppel, negligent misrepresentation, and breach of contract. *Id.* ¶¶ 81-114. In each of these three counts, Bahoor complains of similar underlying conduct: that Varonis induced Bahoor to accept a position by making false promises of long-term employment and commissions based on easily-attainable revenue targets. *Id.* ¶¶ 81-89; 92-102. Bahoor further alleges that Varonis relied on false data about his job performance. *Id.* ¶¶ 103-109. Finally, Bahoor alleges that Varonis fired him without good cause and breached the Agreement. *Id.* ¶¶ 110-114.

Bahoor filed the complaint in the Circuit Court of Cook County on May 19, 2015, but a few weeks later, Varonis removed the action to federal court. R. 1, Notice of Removal. Varonis now moves to compel arbitration based on the arbitration provision in the Agreement, and it also requests that this Court either

4

dismiss the complaint under Rule 12(b)(1) or stay the action pending arbitration. R. 11, Def.'s Mot. to Compel. Bahoor opposes arbitration, arguing that (1) the scope of the arbitration clause does not encompass his claims; (2) the arbitration requirement is unenforceable because it would be prohibitively expensive; and (3) Varonis waived its right to arbitrate.

## II. Legal Standard

Section 4 of the Federal Arbitration Act provides that if arbitration is proper, a "court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. *The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.*" 9 U.S.C. § 4 (emphasis added). Interpreting this provision, the Seventh Circuit concluded that "where the arbitration agreement contains a forum selection clause, only the district court *in that forum* can issue a § 4 order compelling arbitration." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 327 (7th Cir. 1995) (emphasis added). In other words, "[w]e cannot compel arbitration in a forum outside the Northern District of Illinois." *Ferenc v. Brenner*, 927 F. Supp. 2d 537, 542 (N.D. Ill. 2013) (citing *Merrill Lynch*, 49 F.3d at 327). Normally, when arbitration is dictated, a court compels arbitration in that district and stays the court proceeding. 9 U.S.C. § 3 ("If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration … the court in which such suit is pending … shall on application of one of the parties stay the trial of the action until such arbitration has been had … .").

5

But when a court is presented with a motion to compel arbitration in a *different* district, the proper action is to dismiss the complaint for improper venue under Rule 12(b)(3). *See Ferenc*, 927 F. Supp. 2d at 542 (holding that claims were subject to arbitration and converting the motion to compel into a motion to dismiss for improper venue because the contract mandated arbitration in California); *Faulkenberg*, 637 F.3d at 808 ("under § 4 of the FAA, a district court cannot compel arbitration outside the confines of its district."); *Haber v. Biomet, Inc.*, 578 F.3d 553, 558 (7th Cir. 2009) ("When a complaint requesting arbitration is filed in the wrong forum, the appropriate response is for the opposing party to file a motion to dismiss, which should then be granted by the court.").

Here, the arbitration clause in the Agreement between Bahoor and Varonis provides that "any arbitration will be administered … in New York County, New York." Agreement ¶ 12(B). Neither party challenges the validity of this provision or addresses the limitation that this Court may not compel parties to arbitrate outside this district. Regardless, "the central question in this case is the same whether we proceed under § 4 of the FAA or Rule 12(b)(3): did the plaintiff[] agree to arbitrate the claims asserted in [his] complaint?" *Ferenc*, 927 F. Supp. 2d at 542. The Court, therefore, will proceed as if it is deciding a motion to compel arbitration. If the Agreement's arbitration provision is valid and the parties' dispute falls within its scope, the Court will convert Varonis's motion to compel arbitration and dismiss

under Rule 12(b)(1) into a motion to dismiss for improper venue under Rule 12(b)(3). *Id.*[3]

### III. Analysis

The Federal Arbitration Act applies to the Agreement between Bahoor and Varonis, Agreement ¶ 12(A), and provides that "[a] written provision … to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Under the FAA, if the parties have a valid arbitration agreement and the asserted claims in a lawsuit are within its scope, the arbitration requirement must be enforced. 9 U.S.C. §§ 3-4; *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004) (citing *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999)). "Although it is often said that there is a federal policy in favor of arbitration, federal law places arbitration clauses on equal footing with other contracts, not above

---

[3]One final point about the propriety of a Rule 12(b)(3) dismissal: in *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 577 (2013), the Supreme Court held that the proper mechanism to enforce a forum-selection clause in a contract was 28 U.S.C. § 1404(a), and not 28 U.S.C. § 1406(a) or Rule 12(b)(3). The rationale was that Rule 12(b)(3) and § 1406(a) allow for dismissal only when venue is "wrong" or "improper" under the federal venue laws, and that a contractual forum-selection clause does not make venue "wrong" or "improper" under 28 U.S.C. § 1391. *Id.* The Seventh Circuit, however, has not had occasion to address *Atlantic Marine* in light of arbitration forum-selection clauses governed by the Federal Arbitration Act. In *Merrill Lynch*, the Seventh Circuit held that § 4 of the FAA "*establishes the appropriate venue*" in which parties may compel relief. 49 F.3d at 327 (emphasis added). "[T]he directive of § 4 is mandatory" and "clearly requires a geographic link between the site of the arbitration and the district which, by compelling arbitration or directing its scope, exercises preliminary control." *Id.* So even considering *Atlantic Marine*, a Rule 12(b)(3) dismissal is still appropriate in this case because the dismissal addresses the proper district for relief in light of the FAA, and not 28 U.S.C. § 1391. In any event, a district court cannot disregard or overturn controlling Seventh Circuit precedent, and instead it is up to the court of appeals to do so if *Atlantic Marine* requires a different procedural path.

them." *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 740 (7th Cir. 2010) (citing *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010)). That is, the Act was intended to respect parties' agreements to arbitrate and "put arbitration on a par with other contracts and eliminate any vestige of old rules disfavoring arbitration." *Stone v. Doerge*, 328 F.3d 343, 345 (7th Cir. 2003).

For arbitration to be required, the Court must determine that (1) there is a valid written agreement to arbitrate; and (2) Bahoor's claims are within the scope of the arbitration agreement. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). Whether a binding arbitration agreement exists is determined under principles of state contract law. *Janiga*, 615 F.3d at 742 (citing *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 934 (1995)). And "the party seeking to invalidate or oppose the arbitration agreement bears the burden of demonstrating that the arbitration agreement is unenforceable and that the claims are unsuitable for arbitration." *Paragon Micro, Inc. v. Bundy*, 22 F. Supp. 3d 880, 887 (N.D. Ill. 2014) (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000)). The FAA also "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Bahoor does not contest the first issue of validity, as he acknowledges that "Plaintiff admittedly signed arbitration provisions which would govern some disputes between the parties." R. 17, Pl.'s Resp. at 2.[4] He maintains, however, that

---

[4]Bahoor sometimes hints at but does not expressly argue that the Agreement is invalid because of fraud. For example, he alleges that Asaf Tsur misrepresented various

8

"the present claims do not fall within the scope of these arbitration provisions." *Id.* So the Court will first address Bahoor's argument that his claims are outside the scope of the arbitration provision in the Agreement. After that comes Bahoor's argument that the arbitration provision is unenforceable because it would be prohibitively expensive, and that Varonis waived its right to arbitrate. *Id.* at 7-10.

## A. Scope of the Arbitration Agreement

The crux of Bahoor's argument is that his allegations are outside the scope of the Agreement because the "dispute has its origin in Asaf Tsur's misrepresentations, made prior to Plaintiff ever signing an arbitration agreement." Pl.'s Resp. at 6. All three counts of his complaint—promissory estoppel, negligent misrepresentation, and breach of contract—are grounded in some part on the alleged promises that Tsur made during the recruitment period. Compl. ¶¶ 81-114. According to Bahoor, arbitration is inappropriate because it would be "retroactive" and "include claims that had already arisen and are not based on the employment

---

facts about Bahoor's duties and compensation. Pl.'s Resp. at 5; Compl. ¶¶ 20-30. Bahoor also alleges that he relied on these misrepresentations in accepting the job: "Would the duty of communicating accurate information of [sic] been upheld by the Defendant, the Plaintiff would have not accepted the offer for employment together … ." Compl. ¶ 102; *see also id.* ¶¶ 83, 96-97, 105.
     Any invalidity argument based on fraudulent inducement, however, would not affect arbitrability. Because Bahoor does not allege that he was fraudulently induced as to the specific *arbitration* provision (as opposed to the entire Agreement), any question of invalidity based on fraud would be a question for the arbitrator. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967) ("[A] claim of fraud in the inducement of the *contract generally*—as opposed to *the arbitration clause its*elf—is for the arbitrators and not for the courts."); *Faulkenberg*, 637 F.3d at 811 ("The plaintiffs' claim that they were fraudulently induced into signing the franchise agreement does not save this case from dismissal. The only relevant inquiry at this stage is whether the arbitration clause *itself* was fraudulently induced.").

relationship between the parties … ." Pl.'s Resp. at 6. In response, Varonis argues that Bahoor mischaracterizes his allegations, which are actually centered on his work performance and subsequent termination. R. 18, Def.'s Reply at 2-3. Even if these claims did arise before the employment relationship started, Varonis argues that they are nevertheless encompassed by the broad arbitration clause. *Id.* at 4-6.

The Court agrees with Varonis that the parties' broad arbitration provision covers all of Bahoor's claims. In determining the scope of an arbitration provision, courts apply state laws of contract interpretation. *Stone*, 328 F.3d at 344-45 ("most interpretive disputes [about the scope of an arbitration provision] must be resolved under state law."); *Wisconsin v. Ho-Chunk Nation*, 564 F. Supp. 2d 856, 861 (W.D. Wis. 2008) ("In determining the scope of the arbitration provision, ordinary state law contract principles are applied." (citing *Hill's Pet Nutrition, Inc. v. Fru–Con Construction Corp.*, 101 F.3d 63, 65-66 (7th Cir. 1996))). Here, the Agreement contains an expansive arbitration provision that covers "*any and all controversies … arising out of, relating to, or resulting from my employment with the company … .*" Agreement ¶ 12(A) (emphasis added). The Agreement lists a number of covered disputes along with a catchall provision including "*any* statutory or common law claims." *Id.* (emphasis added). And there is no provision excluding any specific claims from arbitration. *Id.* New York courts have explained that when an arbitration clause covers "any dispute" and does not exclude any claims from arbitration, it is an "all-inclusive provision" that presumptively covers the parties' disputes. *Fitzgerald v. Gen. Elec. Co.*, 260 N.Y.S.2d 470, 472 (1965) *aff'd*, 227 N.E.2d

15 (1967); *see also Morris v. Signorelli*, 779 N.Y.S.2d 786, 787 (Sup. Ct. App. Div. 2004) (arbitration clause providing that "each and every controversy or claim arising out of or relating to this Agreement, or the breach thereof" was a "clear, explicit, and unequivocal arbitration clause" with a broad scope).

As a result, the arbitration clause encompasses the entire dispute. Bahoor's claims involving statements made during the recruitment process about compensation, the methods of calculating commissions, and the longevity of the position, Compl. ¶¶ 81-109, clearly arise out of and relate to Bahoor's employment at Varonis, and are common-law claims explicitly covered by the arbitration provision. Similarly, any allegations based on events occurring after Bahoor began his employment—such as claims that Varonis improperly measured his performance and then improperly fired him, Compl. ¶¶ 52-80, 110-114—are also claims that arise out of, relate to, or resulted from his employment. Given that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone*, 460 U.S. at 24-25, the Court must give effect to the parties' clear intent, as expressed in the arbitration provision, to arbitrate Bahoor's claims, all of which relate to his employment at Varonis.

In addition, Bahoor's argument that statements made *before* he signed the Agreement do not "arise out of" his employment is unsupported by the caselaw. Pl.'s Br. at 6. To the contrary, New York courts have held that broad arbitration clauses encompassing "any dispute" cover even fraudulent inducement and other claims involving promises made before the signing of the contract. *See Gabriel Capital,*

11

*L.P. v. Caib Investmentbank Aktiengesellschaft*, 814 N.Y.S.2d 66, 67 (N.Y. App. Div. 2006). For example, in one case, arbitration was proper for claims of "fraud, negligent misrepresentation, promissory estoppel and unjust enrichment[] [that] arose as a result of defendants' alleged misrepresentations for the purpose of inducing plaintiffs to purchase controlling interest" in a company. *Id*. The disputes were within the broad arbitration clause in a purchase agreement covering "[a]ll disputes, controversies or claims arising out of ... this Agreement or the validity, interpretation, performance or breach thereof." *Id*. (quotation marks omitted). *See also, e.g., Silverman v. Benmor Coats, Inc.*, 461 N.E.2d 1261, 1266 (N.Y. 1984) ("a broad arbitration clause is held to submit to the arbitrator questions of fraud in the inducement"); *Tong v. S.A.C. Capital Mgmt., LLC*, 835 N.Y.S.2d 881, 887 (N.Y. Sup. Ct. 2007) *aff'd as modified*, N.Y.S.2d 84 (N.Y. App. Div. 2008) (agreement to arbitrate "any dispute or controversy arising out of or relating to this agreement" was broad enough to cover breach of contract, promissory estoppel, fraudulent inducement, and other common law claims).

Federal case law interpreting the scope of similar clauses also mandates the same result. In the Seventh Circuit, "[b]road arbitration clauses," such as ones including "arising out of or relating to" language, "necessarily create a presumption of arbitrability." *Kiefer Specialty Flooring*, 174 F.3d at 910. Like Bahoor's negligent misrepresentation and promissory estoppel claims, "fraudulent-inducement and intentional-misrepresentation claims are premised on the allegation that the conditions of [the plaintiff's] employment were different than what he had been

12

promised" and are "disputes arising out of [the plaintiff's] employment." *Griffis v. Wells Fargo Advisors, LLC*, 2014 WL 3027683, at *4 (N.D. Ill. July 3, 2014). As a result, "[a]n allegation of fraud in making or inducing an agreement clearly 'relates to' that agreement and can be encompassed by a broad arbitration clause." *Welborn Clinic v. MedQuist, Inc.*, 301 F.3d 634, 641 (7th Cir. 2002); *see also Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1033 (7th Cir. 2012) ("'arising out of' reaches all disputes having their origin or genesis in the contract); *Goldberg v. Focus Affiliates, Inc.*, 152 F. Supp. 2d 978, 981 (N.D. Ill. 2001) ("Claims of fraudulent inducement constitute claims arising 'under the terms of this Agreement'"). Similarly, here, the broad arbitration provision in the Agreement covers all of Bahoor's claims against Varonis, including those involving false promises made before Bahoor started working. These claims fundamentally arise out of, relate to, and result from Bahoor's employment because they involve the terms of that very employment.

### B. Expense of Arbitration

Next, Bahoor argues that the arbitration provision is unenforceable and violates public policy because it requires him to pay half of the arbitration costs, which are prohibitively expensive. Pl.'s Resp. at 8. The Court, however, holds that Bahoor has failed to provide any concrete evidence that arbitration would be cost-prohibitive.

As an initial matter, the Court must determine the operative fee provision. Bahoor argues that an American Arbitration Association (AAA) rule requires the employer to pay the costs of arbitration. Pl.'s Resp. at 7. But this rule does not apply

13

because nowhere in the Agreement are the AAA rules adopted. *See generally* Agreement. To the contrary, the Agreement clearly mandates fee-splitting: "the parties to the arbitration shall each pay an equal share of the costs and expenses of such arbitration, except as prohibited by law … ." Agreement ¶ 12(B). Is it true that the parties agreed to operate under New York's procedural laws and JAMS rules. *Id.* ("any arbitration will be administered by Judicial Arbitration & Mediation Services, Inc. ('JAMS') pursuant to its Employment Arbitration Rules and Procedures"); *id.* ¶ 12(A) (any arbitration will be subject to the "rules set forth in the New York Civil Practice Law and Rules, Article 75, Section 7501 through 7514"). But any default fee provisions in the New York Code and JAMS rules are overridden by the express Agreement that the parties signed. *See Brady v. Williams Capital Grp., L.P.*, 878 N.Y.S.2d 693, 697 (N.Y. App. Div. 2009) *aff'd as modified*, 928 N.E.2d 383 (2010) (AAA rule that the employer pays was trumped by the parties' "clear and unambiguous … intent to share the cost of the arbitrator's compensation" in the contract). *See also* N.Y. C.P.L.R. § 7513 ("*[u]nless otherwise provided in the agreement to arbitrate*, the arbitrators' expenses and fees, together with other expenses, not including attorney's fees, incurred in the conduct of the arbitration, shall be paid as provided in the award." (emphasis added)); JAMS Rule 31 ("*unless the Parties have agreed to a different allocation*, each Party shall pay its pro rata share of JAMS fees and expenses as set forth in the JAMS fee schedule …

." (emphasis added)).[5] Here, Bahoor and Varonis unequivocally agreed to share the arbitration costs equally. Agreement ¶ 12(B).

Bahoor argues that this fee-splitting provision would be cost prohibitive. Pl.'s Resp. at 8. The Supreme Court has recognized that "the existence of large arbitration costs could preclude a litigant … from effectively vindicating her federal statutory rights in the arbitral forum." *Green Tree*, 531 U.S. at 81. Although the Supreme Court held that "a party seek[ing] to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive … bears the burden of showing the likelihood of incurring such costs," *id.* at 92, it "did not state how detailed that showing must be," *Livingston v. Associates Fin., Inc.,* 339 F.3d 553, 557 (7th Cir. 2003); *Brady*, 878 N.Y.S.2d at 698 (same). It did explain, however, that the mere "'risk' that [a plaintiff] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement." *Green Tree*, 531 U.S. at 91. Courts have interpreted *Green Tree* as requiring "some individualized evidence that it likely will face prohibitive costs in the arbitration at issue and that it is financially incapable of meeting those costs." *Livingston*, 339 F.3d at 557 (citation omitted). Both the Seventh Circuit and New York state courts have applied a "case-by-case analysis focused on 'the claimant's ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether the cost differential is so substantial as to deter the bringing of claims.'" *Brady*, 878 N.Y.S.2d at 698 (quoting *Bradford v. Rockwell Semiconductor*

---

[5] JAMS Employment Arbitration Rules & Procedures, http://www.jamsadr.com/rules-employment-arbitration/.

*Sys., Inc.*, 238 F.3d 549, 556 (4th Cir. 2001)); *James*, 417 F.3d at 680 (requiring a litigant to provide evidence of her financial situation and "[t]he cost differential between arbitration and litigation"); *Mariglio v. Berthel Fisher & Co. Fin. Servs.*, — N.Y.S.3d—, 2015 WL 7306245 (N.Y. App. Div. Nov. 20, 2015) (same).

Here, Bahoor has not provided any specific evidence about the financial burden of arbitration. He does not detail what the costs of arbitration might be, the cost differential between court and arbitration, and why this differential will limit his ability to litigate his claims. Instead, Bahoor states only that he is representing himself to save on attorneys' fees and that court costs are "minimal in comparison" to arbitration. Pl.'s Resp. at 8. This is insufficient under the *Green Tree* standard to establish that arbitration would be prohibitively expensive. Nor has Bahoor previously petitioned to proceed *in forma pauperis*, requested appointed counsel, or otherwise indicated any financial difficulties. Bahoor's statements are speculative and the Court cannot conclude that the costs of arbitration would prevent Bahoor from bringing his claims.[6]

### C. Waiver

Bahoor finally argues that Varonis waived the right to arbitrate. Pl.'s Br. at 9-10. A waiver of the right to arbitrate can be express or implied. *Cabinetree of*

---

[6]Bahoor's inability to provide specific evidence of costs also leads the Court to reject his argument that the arbitration clause is *unconscionable* for being prohibitively expensive. Pl.'s Resp. at 8. *See, e.g.*, *Sanchez v. CleanNet USA, Inc.*, 78 F. Supp. 3d 747, 756 (N.D. Ill. 2015) ("When determining whether a provision that forces plaintiffs to equally share the costs of arbitration is commercially reasonable, courts ask whether the named plaintiffs can afford arbitration" under *Green Tree*); *Davis v. Fenton*, 26 F. Supp. 3d 727, 739 (N.D. Ill. 2014) ("Plaintiff's bare assertions that the fees and costs of arbitration would be prohibitively expensive are not enough to meet her burden to prove that the arbitration clause is procedurally unconscionable.").

*Wisconsin, Inc. v. Kraftmaid Cabinetry*, Inc., 50 F.3d 388, 390 (7th Cir. 1995). For example, "an election to proceed before a nonarbitral tribunal … is a presumptive waiver of the right to arbitrate." *Id.* Similarly, a party can also imply waiver by "lengthy delay" in requesting arbitration combined with "substantial participation in the opposing party's litigation." *Welborn Clinic*, 301 F.3d at 637 (citation omitted). The ultimate question is whether "the alleged defaulting party has acted inconsistently with the right to arbitrate." *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Products Co.*, 969 F.2d 585, 588 (7th Cir. 1992) (citation omitted).

In this case, Varonis has not waived its right to arbitration because it has not delayed its request for arbitration nor actively litigated the case in federal court through dispositive motions or discovery before making the request to arbitrate. In fact, it has done the opposite. Bahoor filed his complaint in the Circuit Court of Cook County on May 19, 2015. *See* Compl. Around a month later, on June 22, Varonis removed the case to federal court. Notice of Removal. Just one week after that, it filed this motion to compel arbitration. Mot. to Compel. Varonis has not filed any other motions or otherwise litigated this federal case. This is unlike the litigation conduct in *Cabinetree*, where the defendant moved to compel arbitration after the parties conducted six months of pretrial proceedings, exchanged thousands of pages in discovery, and set a trial date. 50 F.3d at 388. The only "plausible interpretation" of that defendant's behavior was that it originally intended to litigate in federal court but later changed its mind. *Id.* at 391. Similarly, in *St. Mary's*, the defendant waived its right to arbitrate because during a ten-month

17

period, it did more than just weigh the decision to arbitrate or litigate—it filed a dispositive motion without ever mentioning arbitration. 969 F.2d at 589. In contrast, Varonis's actions are consistent with the intent to arbitrate.

Bahoor's argument that the pre-litigation settlement negotiations waived arbitration is also without merit. Pl.'s Resp. at 9-10. Settlement negotiations generally do not indicate waiver, whether they take place before or after a complaint is filed. *See, e.g., Super Pawn Jewlery [sic] & Loan, LLC v. Am. Envtl. Energy, Inc.*, 2013 WL 1337303, at *16 (N.D. Ill. Mar. 29, 2013) ("Engaging in settlement negotiation is not tantamount to waiver, and even when settlement negotiations occur after lawsuit has been initiated.") (citing *Dickinson v. Heinold Securities, Inc.* 661 F.2d 638, 641 (7th Cir. 1981) (eighteen-month settlement negotiations prior to lawsuit not sufficient to waive arbitration); *Carbajal v. Household Bank, FSB*, 2003 WL 22159473 (N.D. Ill. 2003) ("Although the delay in *Dickinson* took place prior to the filing of the lawsuit, there is nothing in the opinion that would suggest that this conclusion should not also be extended to settlement efforts after the suit has been filed especially when those efforts take place in court.")).

## IV. Conclusion

For the reasons discussed above, the Court concludes that Bahoor's claims are subject to arbitration in New York. The Court converts Varonis's motion to compel arbitration and motion to dismiss under Rule 12(b)(1) [R. 11] into a motion to dismiss for improper venue under Rule 12(b)(3), and grants this motion.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: December 28, 2015